IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-02577-RPM

CHOCTAW NATION OF OKLAHOMA and
HOUSING AUTHORITY OF THE CHOCTAW NATION OF OKLAHOMA,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT;
SHAUN DONOVAN, Secretary of Housing and Urban Development;
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing; and
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

      Defendants.

FINDINGS AND CONCLUSIONS AND
ORDER FOR JUDGMENT

On November 25, 2008, Plaintiffs Choctaw Nation of Oklahoma and the Housing Authority of the Choctaw Nation of Oklahoma (collectively, "Choctaw" or "the Tribe") filed this action for judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., claiming that the Defendants (collectively "HUD") violated the Native American Housing Assistance and Self-Determination Act of 1996 ("NAHASDA"), 25 U.S.C. § 4101 et seq., by reducing the number of housing units counted as Formula Current Assisted Stock ("FCAS") for the calculation of the Tribe's share of the annual Indian Housing Block Grant ("IHBG") and recapturing IHBG funds which the Tribe had received in past years. Choctaw filed an

amended/supplemental complaint for declaratory and injunctive relief on September 7, 2010.

Jurisdiction is provided by the APA and by 28 U.S.C. §§ 1331, 1346 and 1362. The Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201, and jurisdiction to grant injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202.

The Administrative Record ("AR") was filed on June 30, 2010.

This action is governed by the version of NAHASDA that existed before it was amended by the Native American Housing Assistance and Self-Determination Reauthorization Act of 2008, Pub. L. No. 110-411, 122 Stat. 4319 (2008). Legal issues common to this action and related actions were determined in two previous memorandum opinions and orders in *Fort Peck Housing Authority v. HUD et al.*, Civil Action No. 05-cv-00018-RPM, dated August 31, 2012, and March 7, 2014.

The order dated March 7, 2014 required the plaintiffs in the coordinated actions to submit proposed forms of judgment, specifying the amounts to be paid to each tribe or tribal housing entity and the asserted sources of payment. On March 26, 2014, HUD moved for the establishment of scheduling orders, requesting additional briefing before entry of any final judgments.

Choctaw submitted its proposed judgment on April 15, 2014. Choctaw seeks restoration of grant funds recaptured by HUD and injunctive relief regarding future recaptures. In its response to HUD's motion for scheduling order, Choctaw identified the challenged agency actions and the factual and legal support for the relief it requests. It is assumed that Choctaw has abandoned claims to any form of relief not identified in its proposed judgment.

HUD replied, stating that because the Plaintiffs have limited the scope of requested relief and identified the challenged agency actions, no further briefing by HUD is necessary. HUD generally preserves its prior arguments that the agency had authority independent of NAHASDA to recover grant overpayments that resulted from erroneous formula unit data; that the monetary relief sought is not available under 5 U.S.C. § 702; that any procedural error was harmless, and the only appropriate remedy would be to remand to HUD for a hearing and decision in the first instance. As discussed below, Section III of HUD's reply presents legal arguments unique to Choctaw's request for monetary relief.

The following facts are evident from the Administrative Record:

In a letter to Choctaw dated December 6, 2001, HUD notified Choctaw that the Tribe had received $1,021,099 in excess payments for FYs 1998 through FY 2001, for housing units that HUD determined were not eligible to be counted as FCAS. According to HUD's letter, the revisions to the Tribe's FCAS were based on information that the Tribe had provided about conveyances.[1]

Choctaw objected to HUD's calculation of the Tribe's FCAS, pointing out that HUD had failed to count other eligible units, which resulted in an underpayment to the Tribe.[2] In a letter to HUD dated January 17, 2002, Choctaw stated, "It remains the position of the [the Tribe] that HUD should equitably offset any underpayment against any overpayment in order to resolve this matter quickly and efficiently."[3]

---

[1] Choctaw Administrative Record ("AR"), Vol. 2, Tab 36 at CNOK000718-22.

[2] AR Vol. 2, Tab 39 at CNOK000728-29; AR Vol. 2, Tab 40.

[3] AR Vol. 2, Tab 39 at CNOK000728.

In a letter to Choctaw dated February 20, 2002, HUD acknowledged that two housing projects owned by the Tribe had become eligible for funding in FY 2001, and as a result, Choctaw had been underfunded in the amount of $179,783.[4] HUD's letter invited the Tribe to contact HUD to discuss "how your Tribe would like to be compensated for these units" and suggested that options included "increasing your Tribe's FY 2002 allocation; off-setting the increase against the $1,021,099 in over-funding in FY 1998, FY 1999, FY 2000 and FY 2001 or adjusting your Tribe's FY 2003 allocation."[5]

Choctaw apparently chose the offset option. In a letter dated April 9, 2002, HUD stated:

In our December 6, 2001 letter, we informed the Tribe that they received $1,021,099 of funding for ineligible units in FY 1998, FY 1999, FY 2000 and FY 2001. However, in our February 20, 2002 letter, we informed the Tribe that they were under-funded in FY 2001 in the amount of $179,783. Based on our April 4, 2002, conversation with Ms. Silliman, the Tribe and HUD agreed to offset their debt by the amount underfunded. In addition, based upon standard repayment terms, the Tribe and HUD agreed that the remaining amount due would be paid back over a 5-year repayment period beginning in FY 2003.[6]

HUD's April 9, 2002 letter continued:

---

[4] AR Vol. 2, Tab 41 at CNOK000734-35.

[5] *Id.* at CNOK000734.

[6] AR Vol. 2, Tab 42 at CNOK000736.

> Therefore, beginning in FY 2003, we will adjust the Choctaw Nation's
> IHBG grant in accordance with the following schedule:
>
> | FY | Repayment Amount |
> |----|------------------|
> | 2003 | $168,264 |
> | 2004 | $168,263 |
> | 2005 | $168,263 |
> | 20006 | $168,263 |
> | 2007 | $168,263 |
> | Total | $841,316[7] |

As described in HUD's letter dated April 9, 2002, HUD reduced its calculation of the grant overfunding to $841,316 (the result of $1,021,099 minus $179,783), and recaptured $841,316 by reducing the Tribe's annual grant award in FYs 2003 through 2007.[8]

Choctaw now seeks monetary relief in the amount of $1,021,099, claiming that HUD's withholding of that amount was illegal according to this Court's prior rulings.

HUD contends that Choctaw's entire claim is barred by the 6-year statute of limitations, 28 U.S.C. § 2401(a). HUD asserts that Choctaw's claim accrued no later than April, 2002, when HUD confirmed that it would recover the $1,021,099 by offsetting $179,783 and taking deductions from the Tribe's future grant awards. Choctaw filed this action on November 25, 2008.

For an action seeking judicial review under the APA, "[t]he right of action first accrues on the date of the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004). In general, two conditions must be satisfied for agency action to be final: "First, the action must

---

[7]*Id.*

[8]AR Vol. 2, Tab 48 at CNOK000801; Vol. 2, Tab 54 at CNOK000824; Vol. 2, Tab 60 at CNOK000955; Vol. 3, Tab 66 at CNOK001034, and Vol. 3, Tab 79 at CNOK001177. Neither Choctaw nor HUD disputes that HUD recaptured $841,316 pursuant to the 5-year repayment plan.

mark the consummation of the agency's decisionmaking process .... And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (citations and quotations omitted). "[C]ases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." *Abbott Labs. v. Gardner*, 387 U.S.136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

In *Lummi Tribe of Lummi Reservation v. United States*, 99 Fed.Cl. 584 (2011), a case involving the same type of claims presented in this action, the United States Court of Federal Claims measured the timeliness of the plaintiffs' claims from when HUD recaptured the alleged overfunding. The Court of Federal Claims explained:

> Although plaintiffs' cause of action with respect to fiscal years 1998 through 2002 accrued when HUD began its recapture of those funds in 2002, *their cause of action with respect to any subsequent fiscal year did not accrue until plaintiffs received grant funds in that year in an amount less than that to which they allegedly were entitled*. Plaintiffs may therefore pursue claims for fiscal years 2003 through 2008 as those claims did not accrue until plaintiffs suffered damage in those fiscal years.

99 Fed. Cl. at 606, n.20 (emphasis added).

That reasoning is apt. In these related actions, the challenged recaptures occurred after an exchange of correspondence between HUD and the Tribe, and HUD's original determinations were often subject to revision.[9] The administrative process that HUD employed to determine alleged grant overfunding was so fluid and ill-defined that HUD's determinations could not be considered final until HUD actually effected recapture.

---

[9]*See, e.g., Navajo Housing Authority v. HUD et al.*, Civil Action No. 08-cv-00826-RPM, AR Vol. 3, Tab 80 at AR001331 (HUD letter dated January 11, 2008, stating "In reviewing our letter dated April 28, 2006, we discovered errors.")

Thus, for claims seeking restoration of grant funds that HUD recaptured through deductions to a Tribe's annual grant, the final agency action occurred when the deductions occurred. Here, HUD took $841,316 from Choctaw by implementing the 5-year repayment plan, beginning in FY 2003. Choctaw's claim for restoration of those funds ($841,316) accrued in 2003 and is not precluded by the 6-year statute of limitations.

With respect to the other $179,783, the Administrative Record shows that in April 2002 Choctaw elected to have HUD offset that amount against HUD's obligation to the Tribe. In essence, HUD recaptured the $179,783 in April 2002, when HUD revised its calculation of the overfunded amount. Choctaw's claim for $179,783 is barred by the 6-year limitation period.

HUD also contends that Choctaw's claim for monetary relief should be limited to no more than $841,316 because Choctaw already received a benefit in the amount of $179,783 when HUD revised its calculation of the overfunding. That argument need not be addressed because Choctaw's claim is timely with respect to $841,316 only.

HUD argues that Choctaw has not shown that it is entitled to restoration of any funds because Choctaw told HUD that the overpaid units had been conveyed. In support of that factual contention, HUD cites a letter dated April 26, 2001, from Choctaw to HUD which described the Tribe's corrections to its FCAS for fiscal years 1998 through 2001.[10] Choctaw's letter enclosed a spreadsheet which listed the Tribe's housing projects, the number and type of units in each project, and changes in the Tribe's FCAS during the period from October, 1997 through September, 2001.[11] The spreadsheet also compared those changes to the Tribe's original FCAS

---

[10]AR Vol. 2, Tab 26 at CNOK000664.

[11]AR Vol. 2, Tab 26 at CNOK000667-69.

calculations.  In its April 26, 2001 letter, Choctaw stated, *inter alia*, "for projects 26 through 77, the negative adjustments equate to conveyances."[12]  HUD contends that this evidence shows that HUD's adjustments to the Tribe's FCAS were due to conveyances, and under that factual circumstance, Choctaw was not prejudiced by the lack of a hearing.

Choctaw moved to strike Section III of HUD's reply, arguing that HUD's arguments about prejudice have been rejected by this Court and are wrong.

Choctaw's motion to strike is granted.  It is not accepted that the spreadsheet is an acknowledgment that the referenced units had been conveyed and the plaintiffs have not conceded that fact.  As this court has explained in prior rulings, the facts underlying adjustments to the Tribe's FCAS should have been addressed at a hearing which HUD should have provided.  HUD had no authority to recapture grant funds that it had already awarded to Choctaw without following the procedures required by the pre-amendment version of NAHASDA.  Choctaw has established that it is entitled to restoration of the recaptured funds in the amount of $841,316.00.

Accordingly, it is

ORDERED that the Defendants' motion for scheduling order [#64] is moot; and it is

FURTHER ORDERED that the Plaintiffs' motion to strike [#72] is granted, and it is

FURTHER ORDERED that the Defendants shall restore to Plaintiffs Choctaw Nation of Oklahoma and Housing Authority of the Choctaw Nation of Oklahoma ("Plaintiff Choctaw") the amount of  $841,316.00, for Indian Housing Block Grant ("IHBG") funds that were illegally recaptured from Plaintiff Choctaw.  Any such restoration shall be in addition to the full IHBG allocation that would otherwise be due to Plaintiff Choctaw under the Native American Housing

---

[12] AR Vol. 2, Tab 26 at CNOK000664.

Assistance and Self-Determination Act ("NAHASDA") in a given fiscal year as calculated without application of the amount of the Judgment; it is

FURTHER ORDERED that the Defendants shall make restoration of the IHBG funds from all available sources, including, but not limited to, either or both IHBG funds carried-forward from previous fiscal years and IHGB funds appropriated in future grant years; it is

FURTHER ORDERED that the restoration of funds to Plaintiff Choctaw necessitated by this order shall be completed and Defendants shall implement restoration of the funds by making adjustments to Plaintiff Choctaw's IHBG allocation(s) no later than 18 (eighteen) months from the date of the Judgment; it is

FURTHER ORDERED that with respect to grant funding for those fiscal years from FY 1997 through and including FY 2008, the Defendants shall refrain from threatening to or implementing any recapture of IHBG funds from Plaintiff Choctaw and shall not act upon any threatened recapture without first complying with the requirements of Section 401(a) of the NAHASDA [25 U.S.C. § 4161(a)] as that subsection existed prior to the effective date of Public Law 110-411; and it is

FURTHER ORDERED that Plaintiff Choctaw is awarded its costs to be taxed upon the filing of a Bill of Costs pursuant to D.C.COLO.LCivR 54.1.

Date: June 25, 2014

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge